UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR 2 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

-------------------------------------------------------------------X

EDWARD J. ROSS, AS ADMINISTRATOR OF THE
ESTATE OF RITA LEVINE,
1211 Dillon Road
Fort Washington, PA 19034

and

HELENE ROSS
1211 Dillon Road
Fort Washington, PA 19034

and

JOAN BAND
231 Park Avenue
Swarthmore, PA 19081

and

GERTRUDE LEVINE
602 Washington Square South, #3007
Philadelphia, PA 19106

        Plaintiffs,

vs.

THE SYRIAN ARAB REPUBLIC,
c/o Foreign Minister Walid al-Muallim
Ministry of Foreign Affairs
Shora, Muhajireen
Damascus, Syria,

and

THE ISLAMIC REPUBLIC OF IRAN,
Ministry of Foreign Affairs
Khomeini Avenue
United Nations Street
Tehran, Iran,

CASE NUMBER 1:06CV00733

JUDGE: James Robertson

DECK TYPE: Personal Injury/Malpractice

DATE STAMP: 04/21/2006

JURY ACTION

**Civil Action No.:**

        and

THE IRANIAN MINISTRY OF INFORMATION
AND SECURITY
Pasdaran Avenue
Golestan Yekon
Tehran, Iran,
                      Defendants.

-------------------------------------------------------------X

## COMPLAINT FOR DAMAGES

Edward J. Ross, as Administrator of the Estate of Rita Levine, Helene Ross, Joan Band, and Gertrude Levine, by their attorneys, allege the following upon information and belief:

1. This action is brought by Edward J. Ross, as Administrator of the Estate of Rita Levine, Helene Ross, Joan Band, and Gertrude Levine pursuant to the Anti-Terrorism Amendments to the Foreign Sovereign Immunities Act ("FSIA") (28 U.S.C. § 1602 *et seq.*), and the laws of the jurisdiction of domicile of those bringing claims as hereinafter alleged.

2. Defendant, the Syrian Arab Republic ("Syria"), is a foreign state that was at the time of the acts hereinafter complained of and is to the present designated as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. Appx. § 2405(j)).

3. Plaintiffs bring this Complaint in connection with Syria's material support, as defined by 18 U.S.C. § 2339A, of the Palestinian Islamic Jihad ("PIJ") terrorist organization, which has been designated a Foreign Terrorist Organization, a Specially Designated Terrorist organization, and a Specially Designated Global Terrorist organization by the United States Government.

4. At all times relevant to the act that gives rise to this action, Syria was providing material support to the PIJ.

2

5. Defendant, the Islamic Republic of Iran ("Iran"), is a foreign state that was at the time of the acts hereinafter complained of and is to the present designated as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. Appx. § 2405(j)).

6. Plaintiffs bring this Complaint in connection with Iran's material support of the PIJ, as defined by 18 U.S.C. § 2339A.

7. Defendant the Iranian Ministry of Information and Security is an agency of Iran.

8. At all times relevant to the act that gives rise to this action, Iran was providing material support to the PIJ.

9. Plaintiffs are citizens of the United States who suffered physical and/or emotional injury as a result of a terrorist attack upon Egged bus #405 on July 6, 1989. This attack was carried out by a member of the PIJ, a terrorist group given safehouses and material support by Syria and financial support, resources, and training by Iran. As a result of these actions, as set forth below, Rita Levine, an American national, was murdered.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction in accordance with the provisions of 28 U.S.C. § 1605, § 1330(a), § 1331, and § 1332(a)(2). The Court exercises in personam jurisdiction over the parties designated as Defendants in accordance with the provisions of 28 U.S.C. § 1605(a)(7) and § 1330(b).

11. Venue in this Court is proper in accordance with the provisions of 28 U.S.C. § 1391(f)(4), which provides in pertinent part that a civil action against a foreign state may be brought in the United States District Court, District of Columbia.

12. At all times relevant to this Complaint, Rita Levine was domiciled in

3

Pennsylvania and was a national of the United States as that term is defined in the Immigration and Nationality Act, § 101(a)(22), 8 U.S.C.A. § 1101(a)(22).

## **NATURE OF THE ACTION**

13. On the afternoon of July 6, 1989, Abdel Hadi Ghneim from Gaza, a PIJ terrorist, commandeered Egged bus #405 traveling from Tel Aviv to Jerusalem. He grabbed the wheel and steered the bus off a cliff into a 200 foot ravine.

14. The PIJ claimed responsibility for this terrorist act.

15. On February 20, 2003, University of South Florida computer engineering professor Dr. Sami Amin Al-Arian was arrested after being indicted on 50 terrorism related charges.

16. During the course of the Al-Arian trial, a stipulation that the PIJ was responsible for the July 6, 1989 attack was entered into evidence. Al-Arian has since pled guilty to supporting the PIJ.

17. In addition, during the course of the trial, an agent of the Federal Bureau of Investigation testified that the PIJ's own website acknowledged responsibility for the July 6, 1989 terrorist attack.

18. More than fourteen (14) people were murdered in the attack, including Rita Levine, an American citizen, who was initially among the many people who were injured.

19. Rita, 39 years old, was a passenger on the Egged bus #405 when Abdel Hadi Ghneim took control of the bus and drove it over the cliff.

20. Prior to visiting Israel, Rita had been an assistant public defender in Philadelphia, Pennsylvania for 15 years.

21. Rita had been in Israel for approximately 7 months prior to the attack, and had successfully passed one portion of the Israeli bar exam. She had intended to return to the United States on July 14, 1989, a week after the attack took place.

22. Rita initially survived the terrorist attack, but had been knocked unconscious. Rescuers rushed her to the Hadassah Ein Kerem Hospital in Jerusalem.

23. When doctors first examined Rita, they were unsure whether she would survive. As a result of the attack, Rita had a collapsed lung, a broken collarbone, and numerous rib fractures. A vertebra in her back had been broken as a result of the attack, and she had also suffered severe damage to her spinal cord that left her paralyzed from the waist down.

24. Two days after the terrorist attack, Rita's condition began to stabilize and Rita's doctor informed the hospital staff and Rita's family members that she would soon be able to start rehabilitation therapy.

25. Thereafter, on Sunday, July 9, 1989, Rita underwent a six-hour operation during which surgeons tried to repair her spinal column.

26. Rita had developed a blood clot that blocked the air passage to her lungs, complications that resulted from the initial injuries she sustained in the terrorist attack. Rita died as a result of these complications on July 18, 1989, nearly two weeks after the attack.

27. Rita had been scheduled to return to the United States on July 14, 1989. Instead, on July 20, 1989 Rita's body was flown back to the Untied States and her funeral was held in Philadelphia the following day.

## THE PARTIES

A. **The Plaintiffs**

28. Plaintiff Edward J. Ross is a citizen of the United States and a resident of the

State of Pennsylvania. He is the Administrator of the Estate of Rita Levine. He is the brother-in-law of Rita Levine.

29. Helene Ross is a citizen of the United States and a resident of the State of Pennsylvania. She is a sister of Rita Levine and the wife of Edward J. Ross.

30. Plaintiff Joan Band is a citizen of the United States and a resident of the State of Pennsylvania. She is a sister of Rita Levine.

31. Plaintiff Gertrude Levine is a citizen of the United States and a resident of the State of Pennsylvania. She is the mother of Rita Levine.

32. On the day of the attack, Joan was in the United States. She first learned of the attack on the radio, but she did not know that her sister had been among those injured.

33. Helene received a telephone call late in the morning from her husband, Edward, who learned that Rita had been on the bus, and had been injured. Soon thereafter, Helene telephoned Joan and informed her that Rita had been injured in the attack.

34. On the day of the attack, Gertrude Levine saw her daughter on a stretcher on a television news program.

35. Joan, Helene and Edward flew to Israel on July 6, 1989 to be with Rita, who had been paralyzed from the waist down, but was still able to communicate with her family members.

36. Over the course of the next 10 days, Helene and Joan spent many hours at their sister's bedside at the hospital.

37. On July 17, 1989, Helene and Edward returned to the United States to bring Gertrude back to Israel to be with Rita.

38. On July 18, 1989, Joan took a taxicab to the hospital and sat with Rita. They

talked, and Rita stated that she did not feel well.

39. While Joan was assisting hospital personnel in lifting Rita into bed, Rita fell limp in Joan's arms. Emergency measures were taken to revive Rita, but she died that day.

40. Joan telephoned her mother, Gertrude, to inform her that Rita had died. Gertrude telephoned Helene and informed her of the news as Helene was driving from the airport.

41. As a result of the attack, prior to her death, Rita Levine experienced extreme physical pain and severe emotional distress. Not only did she endure the physical pain of multiple broken bones and a severe spinal injury, but when she regained consciousness, she was paralyzed and had to live with the expectation of permanent incapacitation.

42. As a result of Rita's death, Plaintiff Helene Ross has experienced emotional pain and suffering, loss of her sister's society, companionship, comfort, advice and counsel and has suffered severe mental anguish and extreme emotional distress.

43. As a result of Rita's death, Plaintiff Joan Band has experienced emotional pain and suffering, loss of her sister's society, companionship, comfort, advice and counsel and has suffered severe mental anguish and extreme emotional distress. Plaintiff Joan Band has undergone treatment by a mental health professional and has been diagnosed with post traumatic stress disorder. Joan continues to suffer from this disorder.

44. As a result of Rita's death, Plaintiff Gertrude Levine has experienced emotional pain and suffering, loss of her daughter's society, companionship, comfort, advice and counsel and has suffered severe mental anguish and extreme emotional distress.

**B.   The Defendants**

45. Defendant the Syrian Arab Republic ("Syria") is a foreign sovereign state. It operates under a Constitution as a Republic with a president, two vice presidents, a prime

minister, and a cabinet titled the Council of Ministers. The Syrian Constitution vests the Arab Ba'ath Socialist Party with leadership functions in the state and society and provides broad powers to the president.

46. On December 29, 1979, the U.S. Secretary of State determined that Syria had repeatedly provided support for acts of international terrorism pursuant to three laws: Section 6(j) of the Export Administration Act, Section 40 of the Arms Export Control Act, and Section 620A of the Foreign Assistance Act (22 U.S.C. § 2371). It was thus designated a state sponsor of terrorism.

47. Defendant the Islamic Republic of Iran ("Iran") is a foreign sovereign state. Iran operated under a constitutional monarchy until January 16, 1979, when Shah Mohammed Reza Pahlavi fled the country after a period of violent unrest orchestrated by the Ayatollah Khomeini, who declared the creation of the Islamic Republic of Iran.

48. Defendant the Iranian Ministry of Information and Security is, and at all times relevant hereto was an Iranian intelligence service. Within the scope of its agency and office, the Iranian Ministry of Information and Security provided material support and resources for terrorism which caused the terrorist attack resulting in Rita Levine's death.

49. Iran has been designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. Appx. § 2405(j)), and Section 620A of the Foreign Assistance Act of 1961 since January 19, 1984. Iran was designated a state sponsor of terrorism as a result of the 1983 Beirut Embassy bombing.

50. This Court, in a number of separate cases, has found Iran liable to victims of state-sponsored terrorism conducted by terrorist organizations in Israel, Gaza, and Lebanon. *See Weinstein v. The Islamic Republic of Iran*, 154 F. Supp. 2d 13 (D.D.C. 2002); *Eisenfeld v. The*

*Islamic Republic of Iran,* 172 F. Supp. 1 (D.D.C. 2000); *Flatow v. The Islamic Republic of Iran,* 999 F. Supp. 1 (D.D.C. 1998).

## FACTUAL ALLEGATIONS

**The Palestinian Islamic Jihad ("PIJ")**

51. The Palestinian Islamic Jihad (الجهاد الإسلامي الفلسطيني -Harakat al-Jihād al-Islāmi al-Filastīni) is one of several prominent terrorist organizations that operates in Palestinian-controlled territory. The PIJ was (and is) primarily a radical Islamist terrorist organization that is committed to the globalization of Islam through violent "Jihad" or holy war.

52. The PIJ is formally committed to the destruction of the State of Israel and to achieving its objectives by violent means, including acts of terrorism.

53. The PIJ was formed in the Gaza Strip during the 1970s by Fathi Shaqaqi as a branch of the Egyptian Islamic Jihad movement.

54. Shaqaqi formed the PIJ with other Islamic radicals after the assassination of Egyptian President Anwar Sadat in 1981 when he returned to the Gaza Strip. Shaqaqi was the Secretary General of the PIJ until on or about October 26, 1995. Until his death, Fathi Shiqaqi and others managed the affairs of the PIJ from PIJ headquarters in Damascus, Syria.

55. The Palestinian Islamic Jihad - Shiqaqi Faction was an international terrorist organization with "cells" or units located throughout the world. The PIJ was also known amongst the conspirators as "the Islamic Jihad Movement in Palestine," "The Movement," and "The Family," and its members as "brothers" or "the youth."

56. An individual who dies while committing an act or acts of violence on behalf of the PIJ is described by the PIJ as a "martyr."

57. In 1988, the Israeli authorities expelled Shaqaqi to Lebanon. While in Lebanon, Shaqaqi solidified contacts with Syria and Iran, as well as Hezbollah, another terrorist group financed by Iran and protected by Syria.

58. Since 1988, the PIJ has received training in Lebanon with material support from Syria and Iran.

59. On October 8, 1997, the PIJ was designated a Foreign Terrorist Organization by the U.S. Government under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The designation has since been renewed every two years, including in 2003.

60. The PIJ knowingly, willfully, and unlawfully combines, conspires, confederates, and agrees to commit numerous acts of international terrorism and other related criminal activity, including murder and attempted murder in violation of the federal criminal code of the United States.

61. The PIJ is currently headquartered in Damascus, Syria.

62. At all pertinent times herein, Syria and Iran have provided material support and resources, as defined in 18 U.S.C. § 2339A, to the PIJ by providing it with funding, direction and training for its terrorist activities. Syria and Iran accordingly have sponsored the PIJ within the meaning of 23 U.S.C. § 1605(a)(7).

**Defendants the Syrian Arab Republic and the Islamic Republic of Iran Have Provided Material Support to the PIJ**

63. Syria has provided the PIJ with lodging, safehouses, communications equipment, facilities, and other material support both prior and subsequent to the terrorist attack on July 6, 1989 that killed Rita Levine.

64. The U.S. State Department report, "Patterns of Global Terrorism: 1989" specifically noted that Syria continues "to provide various forms of support for several terrorist groups."

65. According to the U.S. State Department report, "Patterns in Global Terrorism: 2004," Syria has provided and continues to provide the PIJ with "logistical assistance."

66. Iran has provided the PIJ with lodging, safe houses, communications equipment, facilities, logistics and financing and other material support both prior and subsequent to the terrorist attack on July 6, 1989 that killed Rita Levine.

67. The U.S. State Department report, "Patterns of Global Terrorism: 1989" noted "…an upturn in its [Iran's] support during the second half of the year reflects a return to a greater pace of [involvement in terrorist] operations." The report specifically noted that "Iran continues to actively use terrorist tactics to advance its revolutionary goals…"

68. According to the U.S. State Department report, "Patterns in Global Terrorism: 2004," Iran has provided "…the Palestinian Islamic Jihad…with funding, safe haven, training, and weapons."

69. According to the U.S. State Department report, "Country Report in Terrorism," of April, 2005 and released by the Office of the Coordinator for Counterterrorism, under the subheading of "External Aid," the PIJ "receives financial assistance from Iran and limited logistical assistance from Syria."

70. The PIJ and the terrorist who perpetrated the attack that resulted in the death of Rita Levine were at all times acting with the material support and the concurrence of the Defendants Syria, Iran, and the Iranian Ministry of Information and Security.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### CLAIM OF EDWARD J. ROSS, AS ADMINISTRATOR OF THE ESTATE OF RITA LEVINE WRONGFUL DEATH ACTION

71. Plaintiff Edward J. Ross, as Administrator of the Estate of Rita Levine, a resident of the State of Pennsylvania at the time of the occurrence alleged, repeats and re-alleges each and every allegation set forth above with equal effect as if fully set forth herein.

72. On July 6, 1989, when the terrorist took control of the Egged bus and steered it into a ravine, Rita Levine suffered severe injuries, including the loss of the use of her legs. Twelve days later, Rita Levine died from the complications from her injuries.

73. These injuries were caused by a willful and deliberate act of a terrorist organization that was provided sponsorship and material support by the Defendants. As a consequence of the intentional acts of the PIJ and the material support provided by the Defendants as set forth above, and the injuries thereby inflicted and the resulting death of Rita Levine, Rita Levine experienced severe physical pain and extreme emotional distress.

74. Moreover, as a result of Defendants' wrongful, unlawful and/or negligent acts, that constituted material support of the PIJ, Rita Levine was murdered, thereby causing her estate loss of income and loss of pecuniary support.

75. For the reasons stated above, Defendants are jointly and severally liable to the Estate of Rita Levine.

## SECOND CLAIM FOR RELIEF
## SURVIVAL ACTION

76. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

77. As a result of the aforementioned willful, wrongful, intentional and reckless acts of the PIJ, whose tortious acts, including assault and battery, were materially supported by Defendants, decedent Rita Levine suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of Rita Levine to compensatory damages.

78. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs.

## THIRD CLAIM FOR RELIEF
## NEGLIGENCE

79. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

80. Defendants foresaw, or should have reasonably foreseen, that their actions in harboring, financing and training members of the PIJ and/or their failure to take actions and fulfill duties and obligations, incumbent upon them under law, would create unreasonable risk of injury to persons such as the decedent, Rita Levine, and the Plaintiffs.

81. As a result of the aforementioned negligent behavior of Defendants that constituted material support of the PIJ, decedent Rita Levine was killed, thereby causing Plaintiffs and her estate severe injury, including: pain and suffering, loss of pecuniary support, loss of companionship, severe emotional distress and loss of solatium.

82. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs.

## FOURTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

83. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

84. Defendants' conduct was willful, outrageous, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

85. Defendants' egregious conduct was intended to materially support the PIJ and the PIJ did in fact terrorize the Plaintiffs and cause Rita Levine extreme physical pain and all Plaintiffs severe emotional distress.

86. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs.

## FIFTH CLAIM FOR RELIEF
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

87. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

88. Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

89. Defendants' conduct was egregious and constituted material support to the PIJ which caused Rita Levine extreme physical pain and all Plaintiffs severe emotional distress.

90. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs for their severe injuries, including: pain and suffering, loss of pecuniary support, loss of companionship, severe emotional distress and loss of solatium.

## SIXTH CLAIM FOR RELIEF
## CIVIL CONSPIRACY

91. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

92. Defendants knowingly and willingly conspired, agreed and acted in concert with each other in a common plan and design to provide material support to the PIJ, a Foreign Terrorist Organization, in order to facilitate and cause acts of international terrorism including the terrorist attack in which Rita Levine was murdered.

93. As a result of the terrorist attack facilitated by Defendants' material support of the PIJ, Rita Levine suffered extreme physical pain and all Plaintiffs have suffered the damages enumerated herein.

94. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs.

## SEVENTH CLAIM FOR RELIEF
## AIDING AND ABETTING

95. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

96. Defendants provided one another, and their organs, agencies, instrumentalities, officials, agents and employees with material support of and resources for the PIJ, and other substantial aid and assistance to the PIJ, in order to aid, abet, facilitate and cause the commission of acts of international terrorism including the terrorist attack in which resulted in the death of Rita Levine.

97. As a result of the terrorist attack, resulting from and facilitated by Defendants' provision of material support and resources to the PIJ and other acts of aiding and abetting, Plaintiffs suffered the damages enumerated herein.

98. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

    (a)    Accept jurisdiction over this action;

    (b)    Enter judgment against Defendants, jointly and severally, in favor of each Plaintiff for compensatory damages in amounts to be determined at trial;

    (c)    Enter judgment against Defendants in favor of each Plaintiff for punitive damages;

    (d)    Enter judgment against Defendants in favor of each Plaintiff for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

    (e)    Grant such other and further relief as justice requires.

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: April 21, 2006
       Washington, D.C.

CLIFFORD & GARDE

By _____
John M. Clifford,
D.C. Bar No. 191866
1707 L Street, N.W. Suite 500
Washington, DC 20036
Telephone: (202) 289-8990
Facsimile: (202) 289-8992

Attorneys for Plaintiffs

OSEN & ASSOCIATE, LLC
Gary M. Osen *(pro hac vice application to be filed)*
Naomi B. Weinberg *(pro hac vice application to be filed)*
Aaron Schlanger *(pro hac vice application to be filed)*
700 Kinderkamack Road
Oradell, New Jersey 07649
Telephone (201) 265-6400
Facsimile (201) 265-0303